UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK FRANKLIN HOELTZEL,

     Plaintiff,

v.

MARGIE PILLSBURY, MAUREEN
BURKE, CONNERS, LUCAS, TOM
CARGILL, MARK WOROSZ,
KEVIN PARVIZ, CHALOGIANIS, and
JANE ROE,

     Defendants.

_____/

Case No. 2:19-cv-12328
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 27, 38) AND TO
DENY PLAINTIFF'S MOTIONS TO STAY (ECF Nos. 40 and 41)**

I.  Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  In broad terms,

plaintiff Mark Hoeltzel, proceeding *pro se*, is suing defendants, members of the

University of Michigan Police Department and others,[1] claiming a violation of his

_____

[1] The complaint also names a "Jane Roe," who has recently been identified as
Lynetta Smith, and a summons has been issued directed to Smith.  *See* ECF No.

Fourth Amendment rights during the execution of a search warrant at his home. Based on the results of the search, Hoeltzel was charged with certain crimes and is currently serving a federal prison sentence. Hoeltzel does not challenge the legality of the warrant; rather, he challenges the seizure of certain items which he contends were outside the scope of the warrant. He seeks damages and injunctive relief.

Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 44). Before the Court are two motions for summary judgment by defendants. The first motion is brought by defendants Margie Pillsbury, Maureen Blake, Conners, Lucas, Tom Cargill, Mark Worosz, and Chalongianis, all of whom are affiliated with the University of Michigan Police Department, (hereinafter "the U of M defendants" where appropriate). *See* ECF No. 27. The second motion is brought by Kevin Parviz, a member of the Washtenaw County Sheriff's Department. *See* ECF No. 38. Also before the Court are Hoeltzel's two motions to stay the motions for summary judgment. *See* ECF Nos. 40 and 41. For the reasons that follow, the undersigned recommends that the U of M defendants' motion be GRANTED, Parviz's motion be GRANTED, and Hoeltzel's motions be DENIED.

---

50. Counsel for the University of Michigan defendants has agreed to accept service on her behalf. *See* ECF No. 51.

## II.  Background

Hoeltzel was a medical doctor employed by the University of Michigan Mott Hospital Pediatric Rheumatology Clinic.  (ECF No. 28-1, PageID.139).  On December 5, 2017, the University of Michigan suspended Hoeltzel from his medical staff privileges after it received a credible report "alleging an inappropriate relationship with one patient, and lapses in professionalism and clinical judgment regarding the care of that patient."  (ECF No. 28-4, PageID.150).

After Hoeltzel's suspension, Pillsbury began an investigation into the alleged inappropriate relationship between Hoeltzel and the patient.  (ECF No. 28-1, PageID.139).  The allegations were that Hoeltzel had been in a romantic and sexual relationship with the patient for the previous three years, apparently beginning when the patient was around eighteen years old.  (ECF No. 28-1, PageID.139).  The patient's allegations were corroborated by text messages and emails, which included the exchange of sexually explicit photographs.  (ECF No. 28-1, PageID.139-140).  The investigation also revealed sexual encounters between Hoeltzel and the patient, which occurred both in University of Michigan treatment rooms and at the patient's apartment.  (ECF No. 28-1, PageID.139).  Hoeltzel also told the patient that she could drink alcohol, which he provided despite her being underage, and take narcotic pain killers, which he prescribed, together.  (ECF No. 28-1, PageID.139).

In the course of the investigation into Hoeltzel's inappropriate patient relationship, Pillsbury obtained a search warrant for Hoeltzel's home from a state court magistrate judge.  *See* ECF 28-1.  The search warrant described the property to be searched for and seized as follows:

> a. Seizure for the purpose of full forensics analysis (search), of any digital storage media*, computer, cellular phone, or digital transmission device**.
>
>> i. *As used above, the terms digital storage media includes, but is not limited to, any device which is capable of creating, modifying or storing electronic or magnetic forms of data, or is capable of being read or interpreted by a computer
>>
>> ii. **As used above, a digital transmission device includes, but is not limited to, any digital device which is capable of communicating with other electronic and digital devices through wired or wireless means
>
> b. Any computer hardware or computer-related equipment or computer peripheral.
>
> c. Any and all images of a penis or nude images of [the patient].
>
> d. Proof of residency, proof of ownership of computers, credit card bills showing payments to Internet Service Providers and web sites or download venues.  Wallets, purses, or other personal luggage or personal digital assistants that may contain passwords, pass phrases or other encryption information.

(ECF No. 28-1, PageID.141).

On December 12, 2017, the search warrant was executed by the U of M defendants.  (ECF No. 28-2, PageID.145).  During the execution of the warrant, the U of M defendants "discovered, in plain view, Plaintiff's UM identification card (MCard), a key fob, a duo token and Michigan Medicine patient files.  A 'Duo token' is a standalone hardware device that generates a passcode needed for U-M

4

systems and resources." (ECF No. 28-2, PageID.145). Pillsbury then contacted

Michigan Medicine Security Manager Lynetta Smith to inform her of the discovery

of these items. (ECF No. 28-2, PageID.145). Smith requested that the U of M

defendants "seize the items as they were property of U-M and controlled Plaintiff's

access to U-M buildings and facilities." (ECF No. 28-2, PageID.145). The U of M

defendants then seized the items "per the direction of Lynetta Smith." (ECF No.

28-2, PageID145.) Parviz was also present during the execution of the search

warrant, but he did not personally seize any items. (ECF No. 38-2, PageID.253).

### III.  Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is material if it might affect the outcome of the case under governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views

the evidence, all facts, and any inferences that may be drawn from the facts in the

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley

Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing

that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Hoeltzel is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## IV.  Analysis

Hoeltzel brings this case against all defendants for alleged violations of his Fourth Amendment rights during the execution of a search warrant.  Hoeltzel challenges the seizure of the following four items: an MCard, a key fob, a duo token, and Michigan Medicine patient files.

7

As an initial matter, Hoeltzel disputes that these were all of the items that were seized.  (ECF No. 40, PageID.259).  He claims that there were five items seized: a lanyard; an identification card; a key; a duo token; and research files containing de-identified patient information.  *See* ECF No. 40, PageID.259. Hoeltzel contends that the U of M defendants neglected to list the "key." However, as the U of M defendants explain, what Hoeltzel refers to as the "key," they have referred to as the "key fob."  As to the lanyard, it is not listed on the search warrant return and tabulation.  The U of M defendants, however, note that the lanyard may have been seized because "it is a customary practice for staff and faculty to use a lanyard to hold keys or MCards."  (ECF No. 43, PageID.303).  In any event, Hoeltzel focuses not on the lanyard but rather the alleged missing "key." However, there is no missing key.  Thus, there is no material dispute as to the nature or number of items seized.

## A. Individual Capacity Claims

### 1.  The U of M Defendants

The U of M defendants assert they are entitled to qualified immunity because Hoeltzel has not alleged the violation of a clearly established constitutional right as the items were lawfully seized and the U of M defendants did not flagrantly disregard the warrant's limitations.  (ECF No. 28, PageID.125-132).  Section 1983 claims are subject to the affirmative defense of qualified

immunity.  *Regets v. City of Plymouth*, 568 F.App'x 380, 386 (6th Cir. 2014).

"Qualified immunity shields government officials in the performance of

discretionary functions from standing trial for civil liability unless their actions

violate clearly established rights." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir.

2016).  "A plaintiff who brings a § 1983 action against such an official bears the

burden of overcoming the qualified immunity defense." *Id*.

"At the summary judgment stage, the plaintiff must show that (1) the

defendant violated a constitutional right and (2) that right was clearly established."

*Id*.  "A defendant bears the initial burden of putting forth facts that suggest that he

was acting within the scope of his discretionary authority." *Stoudemire v. Mich.*

*Dep't of Corrections*, 705 F.3d 560, 568 (6th Cir. 2013).  "Ultimately, however,

the burden of proof is on the plaintiff to show that the defendants are not entitled to

qualified immunity." *Id*. (quotation marks and citation omitted).  "[T]he plaintiff

must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,'

that is, 'evidence on which [a] jury could reasonably find for the plaintiff.' "

*McDonald*, 814 F. App'x at 812 (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S.

242, 252, 256 (1986)).

Thus, the first question to consider is whether Hoeltzel can show that the U

of M defendants violated his Fourth Amendment rights by seizing the four items at

issue.  Sometimes the seizure of items not named in a warrant may violate the

Fourth Amendment.  *See Brindley v. Best*, 192 F.3d 525, 533 (6th Cir. 1999).

However, "a search does not become invalid merely because some items not

covered by a warrant are seized.  Rather, an otherwise valid search becomes an

impermissible general search only where the searching officers demonstrate a

flagrant disregard for the limitations of a search warrant." *Marcels v. Twp. of

Redford*, 693 F.3d 589, 602 (6th Cir. 2012).

Here, the seizure of the MCard, key fob, and duo token did not "demonstrate

a flagrant disregard for the limitations of a search warrant." *Id*.  This is because all

three items were digital transmission devices, which, as explained in the warrant,

are "any digital device[s] which [are] capable of communicating with other

electronic and digital devices through wired or wireless means."  As Smith states

in her declaration:

> A "Duo token" is a standalone hardware device that generates a passcode
> need for U-M systems and resources.  Hoeltzel's MCard and key fob permit
> his access to UM areas and facilities, and all of these devices are capable of
> being read or interpreted by a computer and are capable of communication
> with other digital or electronic devices.

(ECF No. 28-3, PageID.148).  Thus, the U of M defendants did not violate

Hoeltzel's Fourth Amendment rights in seizing these digital items. Moreover, as

will be explained, the items belonged to the University of Michigan and therefore,

even if they are not considered digital devices within the meaning of the search

warrant, the U of M defendants did not act wrongfully in seizing them.

However, the seizure of the patient files must be considered separately.  The patient files were not named in the warrant nor do they fall into the category of "digital transmission devices."  The seizure of the patient files is considered below.

Items that are in plain view, which are seized by officers who are lawfully present may, under some circumstances, be seized even though the items are not named in a search warrant.  *United States v. McLevain*, 310 F.3d 434, 438-440 (6th Cir. 2002).  The items may be seized if the criminality of the items is " 'immediately apparent' " to the officers.  *Id*., quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971).  When determining whether the criminality of the items is immediately apparent, the following three factors are instructive:

> 1) "a nexus between the seized object and the items particularized in the search warrant," 2) "whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal activity," and 3) whether "the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature."

*McLevain*, 310 F.3d at 441 (citations omitted).

The U of M defendants admit that "the nexus between the patient files and the warrant descriptions are less clear."  (ECF No. 28, PageID.130).  The warrant describes electronic devices, photographs depicting sexually explicit images, and items that may contain passwords; it does not describe paperwork or files related to patient care or research.  However, the crime under investigation related to Hoeltzel's alleged sexual abuse of a patient, and there is therefore a nexus between

the files and the alleged crime.  As to probable cause, the U of M defendants could reasonably have determined that the files related to Hoeltzel's criminal activities since his crime involved the sexual abuse of a patient and the files seized appeared to be patient files.

The final consideration under the plain view doctrine "requires that an officer have a lawful right of access to the object at issue." *Id*. at 443.  The U of M defendants argue that since all of the seized files belonged to the University of Michigan, they had a lawful right of access to them.  Hoeltzel argues that the U of M defendants lacked a lawful right of access because he held a possessory interest in the items.  The record is clear that all four items, including the patient files, were property of the University of Michigan and were seized after Hoeltzel was suspended.  Indeed, Smith instructed the U of M defendants to seize the items because they were the property of the University of Michigan and Hoeltzel's medical privileges had been suspended, and it is "Michigan Medical practice and policy to collect UM property from employees who have been suspended or terminated from employment."  (ECF No. 28-3, PageID.148).  What is at issue is if, notwithstanding this practice and policy, Hoeltzel nonetheless maintained a possessory interest in the files and other items.

In *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177 (2nd Cir. 2004), a teacher sued after the school district by whom he was formerly

employed searched his old classroom and removed items. Some of the items removed from the classroom were educational materials prepared by the teacher, such as "tests, quizzes, and homework problems." *Id*. at 185. The teacher claimed this was a seizure under the Fourth Amendment because he had a possessory interest in the materials. *Id*. The Second Circuit, however, held that he did not have a possessory interest in the materials because, under the Copyright Act of 1976, the materials fell under the "work-for-hire" exception. *Id*. at 185-186. Under the work-for-hire exception, the employer, rather than the employee, is considered the author of the materials and the owner of "all the rights comprised in the copyright." *Id*. at 186, quoting 17 U.S.C. § 201(b).

Here, like in *Shaul*, Hoeltzel was an employee who prepared materials within the scope of his employment. These materials (the patient files) belonged to the University of Michigan who could thus both entrust Hoeltzel with possession of the files, and then withdraw that entrustment of possession once he was suspended. Because Hoeltzel lacked a possessory interest in the patient files at the time of the seizure, he cannot successfully bring a claim for an unreasonable seizure. The same is true for the digital items, which were unquestionably the property of the University of Michigan. This is true even though the seizure of the items took place during the execution of a search warrant. *See United States v. Clouston*, 623 F.2d 485 (6th Cir. 1980) (upholding the seizure of telephone

equipment from defendant's workplace although the equipment was not included in the search warrant); *United States v. Venkataram*, No. 06 CR.102 RPP., 2007 WL 54564 (S.D.N.Y. Jan 5, 2007) (denying defendant's motion to suppress the seizure of physical items from his office after defendant had been suspended and his previous request to retrieve personal items had been granted).  Put simply, Hoeltzel has not shown that the U of M defendants violated his Fourth Amendment rights.  And even if they had, they are entitled to qualified immunity.

Hoeltzel relies on *Lesher v. Reed*, 12 F.3d 148 (8th Cir. 1994), to argue that he can state a Fourth Amendment claim even though the University of Michigan claim ownership of the seized items.  In *Lesher*, the court held that a public employee and his wife, James and Dawn Lesher, stated a Fourth Amendment claim when officers entered their home and seized a police dog without a warrant.  *Id*. at 151.  The district court had determined that the police department owned the dog and thus that the Leshers could not state a Fourth Amendment claim.  *Id*. at 150. The Eighth Circuit, however, determined that the district court improperly focused on who owned the dog, rather than if the Leshers had a possessory interest in the dog.  *Id*.  ("A seizure of property occurs when there is some meaningful interference with a person's *possessory* interests in that property.")

*Lesher* is distinguishable and does not support Hoeltzel's claim.  Unlike in *Lesher*, Hoeltzel, a suspended University of Michigan employee, did not have a

possessory interest in the seized items.  The University of Michigan could and did revoke the entrustment of possession before the seizure occurred.  As explained above, it is the University's policy to recover its property from suspended and terminated employees.  *Lesher* is inapplicable.  Hoeltzel has failed to demonstrate a violation of his Fourth Amendment rights by the U of M defendants.

## 2. Parviz

Parviz argues that claims against him should be dismissed because of the doctrine of qualified immunity and/or because the claims against him are conclusory and fail to state a claim for which relief can be granted.  (ECF No. 38, PageID.238-245).  The undisputed evidence, as established by Parviz's affidavit, is that he "did not personally seize any evidence found during the search of Hoeltzel's residence."  (ECF No. 38-2, PageID.253).  As Parviz did not personally seize any evidence, he cannot be held liable for any Fourth Amendment seizure violations that occurred during the search of Hoeltzel's home.  Moreover, Hoeltzel fails to articulate any specific allegation of wrongdoing against Parviz and provides only distinguishable authority for the proposition that his mere presence during the search amounts to a constitutional violation under the circumstances.

Hoeltzel relies on *Cochran v. Folger*, 740 F. Supp. 2d 923 (E.D. Ky. 2010), *aff'd in part sub nom. Cochran v. Gilliam*, 656 F.3d 300 (6th Cir. 2011), to argue that Parviz need not have seized anything to have violated Hoeltzel's Fourth

Amendment rights.  The district court in *Cochran* stated, "Violation of an

individual's Fourth Amendment right to be free of unreasonable seizure does not,

however, require physical seizure of the personal property in question by the

officers" and that the officers' "presence on the premises was a state action that

resulted in a meaningful interference with [the plaintiff's] possessory interests in

his property." *Cochran*, 740 F. Supp. 2d at 932.  However, in affirming, the Sixth

Circuit noted that "Here, the record contains photos showing at least one of the two

[sheriffs] carrying items out of the house and helping the Landlords load [the

plaintiff's] property into a pickup truck." *Cochran*, 656 F.3d at 308.  It also

explained that "This Court 'has held that an officer's mere presence at the scene to

keep the peace while parties carry out their private repossession remedies does not

render the repossession action that of the state.' " *Id*. (quoting *Revis v. Meldrum*,

489 F.3d 273, 290 (6th Cir.2007) (citing *United States v. Coleman*, 628 F.2d 961,

963–64 (6th Cir. 1980)).

Here, Parviz's mere presence at the scene while the U of M defendants

executed a search warrant was not a violation of Hoeltzel's Fourth Amendment

rights.  There is no evidence that Parviz assisted the U of M defendants in any way.

Furthermore, even assuming Parviz was involved in the seizure of the items,

Hoeltzel's claim against him fails for the same reasons discussed above with

respect to the U of M defendants.  That is, no constitutional violation occurred.

Overall, Hoeltzel has failed to state a claim against Parviz.

### B.  Official Capacity Claims

Hoeltzel has sued all of the defendants in both their official and unofficial

capacities for damages as well as injunctive and declaratory relief.  (ECF No. 1,

PageID.2-6).  The U of M defendants argue that they are entitled to Eleventh

Amendment immunity to the extent they are sued in their official capacities.  (ECF

No. 28, PageID.132-135).  Parviz argues that "Plaintiff's Complaint makes no

mention of a separate official capacity claim," and that, even if it did, such a claim

would fail.  (ECF No 49, PageID.327).

### 1. U of M Defendants

The Eleventh Amendment applies to a suit brought against a state by one of

its own citizens.  *Ex Parte Young*, 209 U.S. 123 (1908).  The Eleventh Amendment

describes the contours of sovereign immunity, providing that "[t]he Judicial power

of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.

This means that "[t]he Eleventh Amendment bars § 1983 suits against a state, its

agencies, and its officials sued in their official capacities for damages."  *Cady v.

Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).

The U of M defendants are members of the U of M Police Department, which is a part of the U of M.  "The University of Michigan is a department of the government of the State of Michigan and is thus protected by the Eleventh Amendment."  *Lipian v. Univ. of Michigan*, 456 F. Supp. 3d 937, 954 (E.D. Mich. 2020).  Accordingly, the U of M defendants are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacities.  This includes immunity even from declaratory-judgment actions where a declaratory judgment would have "much the same effect as a full-fledged award of damages or restitution by the federal court."  *Green v. Mansour*, 474 U.S. 64, 73 (1985) (permitting declaratory judgments would result in "a partial 'end run' around" the Supreme Court's Eleventh Amendment jurisprudence).

However, even though the U of M defendants are entitled to Eleventh Amendment immunity from damages and declaratory judgments, they may not be immune from injunctive relief.  This is because "federal courts [may] enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution."  *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014).  "[T]he Eleventh Amendment does not preclude a suit against [state officers] for prospective injunctive relief."  *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)); *see Ex Parte Young*, 209 U.S. at 129.  Further, "[w]hile [p]ersonal-

capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quotation marks and citations omitted). "As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit imposes liability on the entity that he represents." *Id*. (quotation marks and citations omitted).

Here, Hoeltzel requests the following injunctive relief: (1) an order directing defendants to release the allegedly illegally seized items to their respective owners and (2) an order "[p]reventing the University of Michigan from using its Police Department to seize property related to employment from employee's private property without a search warrant or probable cause." (ECF No. 1, PageID.10). "The return of illegally seized property can be a remedy for a violation of Fourth Amendment rights." *Covington v. Winger*, 562 F. Supp. 115, 119 (W.D. Mich. 1983). However, Hoeltzel does not actually claim that any of the defendants possess the seized items. Presumably, the items are either within the possession of the University of Michigan Police Department or have been returned to other departments. Accordingly, even if the Court found that the items were illegally seized and should be returned, which it does not, it could only order that the items

be returned to their owners, which they presumably have been.  Moreover, as discussed above, none of the items were illegally seized.

Next, Hoeltzel asks the Court to enter an order essentially ordering the University of Michigan to stop its police department from conducting illegal seizures.  However, in order "[t]o state an official-capacity claim under § 1983 of the type that might entitle him to injunctive relief, the plaintiff needs to show that his claim is not based entirely on past acts, and that there is a direct causal link between the alleged constitutional violation and an official policy or custom adopted by the official makers of the policy with 'deliberate indifference' toward the constitutional rights of persons affected by the policy or custom."  *Green v. Howard*, No. 3:13-cv-20, 2013 WL 140609, at *5 (M.D. Tenn. Jan. 10, 2013) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Here, Hoeltzel fails to point to an official policy or custom of the University of Michigan or its police department that resulted in a deprivation of his constitutional rights.  Further, as explained above, no illegal seizure actually occurred in this case.  The U of M defendants are therefore entitled to summary judgment on Hoeltzel's official capacity claim.

## 2. Parviz

As a member of the Washtenaw Sheriff Department, Parviz is an agent of a municipality, not the state.  "Eleventh Amendment sovereign immunity does not

apply to municipalities or their officials." *Thomas v. Noder-Love*, 621 F. App'x 825, 833 (6th Cir. 2015).  Therefore, Parviz is not protected by Eleventh Amendment sovereign immunity.  However, for the reasons previously discussed, Hoeltzel has failed to state a claim against Parviz regardless of whether he is sued in his individual or official capacity.  Furthermore, it appears from his complaint that Hoeltzel's claims for injunctive relief are only asserted against the U of M defendants.

## C. Motions to Stay

Hoeltzel has moved to stay proceedings on the two motions for summary judgment on the grounds that he should be afforded an opportunity to develop his facts and legal argument after discovery.  *See* ECF No. 40, PageID.279 and ECF No. 41, PageID.290.  Putting aside that the motions to stay were not separately filed but rather are included within his response briefs, no discovery would change the outcome based on the record as its stands.  Rather, the relevant facts are undisputed as to the items seized and the circumstances of the seizure, which form the entire basis for Hoeltzel's claims. There is no basis to stay resolution of defendants' motions pending additional discovery.  Accordingly, Hoeltzel's motions to stay should be denied.

## V. Conclusion

For the reasons stated above, the undersigned recommends that the U of M defendants' motion be GRANTED, Parviz's motion be GRANTED, and Hoeltzel's motions be DENIED.

Dated: February 4, 2021  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.   If the court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on February 4, 2021.


s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager