UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK FRANKLIN HOELTZEL,

    Plaintiff,

v.

LYNETTA SMITH,

    Defendant.
_____/

Case No. 2:19-cv-12328
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT SMITH'S MOTION FOR SUMMARY JUDGMENT (ECF No. 59)

### I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. In broad terms, plaintiff Mark Hoeltzel, proceeding *pro se*, sued members of the University of Michigan Police Department and others, claiming a violation of his Fourth Amendment rights during the execution of a search warrant at his home. Based on the results of the search, Hoeltzel was charged with certain crimes and is currently serving a federal prison sentence. Hoeltzel does not challenge the legality of the warrant; rather, he challenges the seizure of certain items which he contends were outside the scope of the warrant. He seeks damages and injunctive relief.

Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 44). On February 4, 2021, the undersigned issued a report and recommendation recommending the dismissal of all defendants, except for Lynetta Smith (Smith) who had not yet been served. (ECF No. 52). The Court adopted the report and recommendation. (ECF No. 55). Accordingly, Smith is the sole remaining defendant. Smith filed a motion for summary judgment (ECF No. 59), to which Hoeltzel responded (ECF No. 66). The motion is now ready for consideration. For the reasons that follow, the undersigned recommends that Smith's motion be GRANTED and the case be DISMISSED.

## II. Background

As set forth in the prior report and recommendation, Hoeltzel was a medical doctor employed by the University of Michigan Mott Hospital Pediatric Rheumatology Clinic (U of M). (ECF No. 59-1, PageID.412). On December 5, 2017, U of M suspended Hoeltzel from his medical staff privileges after it received a credible report "alleging an inappropriate relationship with one patient, and lapses in professionalism and clinical judgment regarding the care of that patient." (ECF No. 59-4, PageID.423).

After Hoeltzel's suspension, Detective Margie Pillsbury began an investigation into the alleged inappropriate relationship between Hoeltzel and the patient. (ECF No. 59-1, PageID.412). The allegations were that Hoeltzel had been

2

in a romantic and sexual relationship with the patient for the previous three years, apparently beginning when the patient was around eighteen years old. (*Id.*, PageID.412). The patient's allegations were corroborated by text messages and emails, which included the exchange of sexually explicit photographs. (*Id.*, PageID.412-413). The investigation also revealed sexual encounters between Hoeltzel and the patient, which occurred both in U of M treatment rooms and at the patient's apartment. (*Id.*, PageID.412). Hoeltzel also told the patient that she could drink alcohol, which he provided despite her being underage, and take narcotic pain killers, which he prescribed, together. (*Id.*).

In the course of the investigation into Hoeltzel's inappropriate patient relationship, Pillsbury obtained a search warrant for Hoeltzel's home from a state court magistrate judge. *See* ECF 59-1. The search warrant described the property to be searched for and seized as follows:

> a. Seizure for the purpose of full forensics analysis (search), of any digital storage media\*, computer, cellular phone, or digital transmission device\*\*.
>
>     i. \*As used above, the terms digital storage media includes, but is not limited to, any device which is capable of creating, modifying or storing electronic or magnetic forms of data, or is capable of being read or interpreted by a computer
>
>     ii. \*\*As used above, a digital transmission device includes, but is not limited to, any digital device which is capable of communicating with other electronic and digital devices through wired or wireless means

3

>b. Any computer hardware or computer-related equipment or computer peripheral.
>
>c. Any and all images of a penis or nude images of [the patient].
>
>d. Proof of residency, proof of ownership of computers, credit card bills showing payments to Internet Service Providers and web sites or download venues. Wallets, purses, or other personal luggage or personal digital assistants that may contain passwords, pass phrases or other encryption information.

(ECF No. 59-1, PageID.414).

On December 12, 2017, the search warrant was executed by U of M police officers. (ECF No. 59-2, PageID.418). During the execution of the warrant, the U of M police officers "discovered, in plain view, Plaintiff's UM identification card (MCard), a key fob, a duo token and Michigan Medicine patient files. A 'Duo token' is a standalone hardware device that generates a passcode needed for U-M systems and resources." (*Id*.). Pillsbury then contacted Michigan Medicine Security Manager Smith to inform her of the discovery of these items. (*Id*.). Smith requested that the U of M police officers "seize the items as they were property of U-M and controlled Plaintiff's access to U-M buildings and facilities." (*Id*.). The U of M police officers then seized the items "per the direction of Lynetta Smith." (*Id*.) Detective Parviz was also present during the execution of the search warrant, but he did not personally seize any items. (ECF No. 38-2, PageID.253).

III. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*,

432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Hoeltzel is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary

6

judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## IV. Analysis

Hoeltzel's claims against Smith, in both her official and unofficial capacity, are for alleged violations of his Fourth Amendment rights during the execution of the search warrant. These claims are identical to the claims against the dismissed defendants. Accordingly, much of the analysis in this report and recommendation is the same as the analysis in the adopted report and recommendation that recommended dismissal of the other defendants. *See* ECF No. 52.

At issue is the seizure of the following four items: an MCard; a key fob; a duo token; and Michigan Medicine patient files. Hoeltzel again disputes that these were all of the items that were seized. (ECF No. 66, PageID.462-463). He claims that there were five items seized: a lanyard; an identification card; a key; a duo token and research files containing de-identified patient information. *See id*. Hoeltzel contends that Smith neglected to list the "key." However, as the U of M police officers explained in their motion for summary judgment, what Hoeltzel

7

refers to as the "key," they have referred to as the "key fob." As to the lanyard, it is not listed on the search warrant return and tabulation; however, it may have been seized because, as the U of M police officers noted, "it is a customary practice for staff and faculty to use a lanyard to hold keys or MCards." (ECF No. 43, PageID.303). In any event, Hoeltzel focuses on the alleged missing "key." However, there is no missing key. Thus, as the undersigned previously concluded, there is no material dispute as to the nature or number of items seized.

## A. Individual Capacity Claim

As to Hoeltzel's claim against Smith in her individual capacity, Smith asserts that she is entitled to qualified immunity because Hoeltzel has not alleged the violation of a clearly established constitutional right as the items were lawfully seized and Smith did not flagrantly disregard the warrant's limitations. (ECF No. 59, PageID.396-397). Section 1983 claims are subject to the affirmative defense of qualified immunity. *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014). "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). "A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense." *Id*.

"At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *Id*. "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Stoudemire v. Mich. Dep't of Corrections*, 705 F.3d 560, 568 (6th Cir. 2013). "Ultimately, however, the burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Id*. (quotation marks and citation omitted). "[T]he plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which [a] jury could reasonably find for the plaintiff.'" *McDonald*, 814 F. App'x at 812 (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252, 256 (1986)).

Thus, the first question is whether Hoeltzel can show that Smith violated his Fourth Amendment rights by directing the seizure of the four items at issue. Sometimes the seizure of items not named in a warrant may violate the Fourth Amendment. *See Brindley v. Best*, 192 F.3d 525, 533 (6th Cir. 1999). However, "a search does not become invalid merely because some items not covered by a warrant are seized. Rather, an otherwise valid search becomes an impermissible general search only where the searching officers demonstrate a flagrant disregard for the limitations of a search warrant." *Marcels v. Twp. of Redford*, 693 F.3d 589, 602 (6th Cir. 2012).

9

> As the undersigned explained in the prior report and recommendation:
>
>> Here, the seizure of the MCard, key fob, and duo token did not "demonstrate a flagrant disregard for the limitations of a search warrant." [*Marcels v. Twp. of Redford*, 693 F.3d 589, 602 (6th Cir. 2012).] This is because all three items were digital transmission devices, which, as explained in the warrant, are "any digital device[s] which [are] capable of communicating with other electronic and digital devices through wired or wireless means."
>
> (ECF No. 52, PageID.342). Indeed, as Smith states in her declaration:
>
>> A "Duo token" is a standalone hardware device that generates a passcode need for U-M systems and resources. Hoeltzel's MCard and key fob permit his access to UM areas and facilities, and all of these devices are capable of being read or interpreted by a computer and are capable of communication with other digital or electronic devices.
>
> (ECF No. 59-3, PageID.421).

Thus, Smith did not violate Hoeltzel's Fourth Amendment rights in directing the seizure of these digital items. Moreover, as the undersigned previously concluded and will again be explained, the items belonged to U of M; therefore, even if they are not considered digital devices within the meaning of the search warrant, Smith did not act wrongfully in directing their seizure.

However, as the undersigned previously noted, the seizure of the patient files must be considered separately. The patient files were not named in the warrant nor do they fall into the category of "digital transmission devices." As previously explained:

10

> Items that are in plain view, which are seized by officers who are lawfully present may, under some circumstances, be seized even though the items are not named in a search warrant. *United States v. McLevain*, 310 F.3d 434, 438-440 (6th Cir. 2002). The items may be seized if the criminality of the items is " 'immediately apparent' " to the officers. *Id*. (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)). When determining whether the criminality of the items is immediately apparent, the following three factors are instructive:
>
>> 1) "a nexus between the seized object and the items particularized in the search warrant," 2) "whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal activity," and 3) whether "the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature."
>
> *McLevain*, 310 F.3d at 441 (citations omitted).

(ECF No. 52, PageID.343).

Smith, as did the other defendants, admits that "the nexus between the patient files and the warrant descriptions are less clear." (ECF No. 59, PageID.403). This, however, does not change the outcome, as the undersigned previously concluded that the patient files were properly seized:

> The warrant describes electronic devices, photographs depicting sexually explicit images, and items that may contain passwords; it does not describe paperwork or files related to patient care or research. However, the crime under investigation related to Hoeltzel's alleged sexual abuse of a patient, and there is therefore a nexus between the files and the alleged crime. As to probable cause, the U of M police officers could reasonably have determined that the files related to Hoeltzel's criminal activities since his crime involved the sexual abuse of a patient and the files seized appeared to be patient files.

(ECF No. 52, PageID.344).

11

The final consideration under the plain view doctrine "requires that an officer have a lawful right of access to the object at issue." *Id*. at 443. Smith argues that since all of the seized files belonged to U of M, she and the U of M police officers had a lawful right of access to them. Hoeltzel argues that the U of M police officers lacked a lawful right of access because he held a possessory interest in the items. The record is clear that all four items, including the patient files, were property of U of M and were seized after Hoeltzel was suspended. Indeed, Smith instructed the U of M police officers to seize the items because they were the property of U of M and Hoeltzel's medical privileges had been suspended, and, according to Smith, it is "Michigan Medical practice and policy to collect UM property from employees who have been suspended or terminated from employment." (ECF No. 59-3, PageID.421).

Moreover, to the extent that Hoeltzel argues that he nonetheless maintained a possessory interest in the files and other items, the undersigned has already concluded he does not:

> These materials (the patient files) belonged to the University of Michigan who could thus both entrust Hoeltzel with possession of the files, and then withdraw that entrustment of possession once he was suspended. Because Hoeltzel lacked a possessory interest in the patient files at the time of the seizure, he cannot successfully bring a claim for an unreasonable seizure. The same is true for the digital items, which were unquestionably the property of the University of Michigan.

12

(ECF No. 52, PageID.344). Nothing in Hoeltzel's motion papers require a different outcome.

In sum, Hoeltzel, a suspended U of M employee, did not have a possessory interest in the seized items. U of M could and did revoke the entrustment of possession before the seizure occurred. It is U of M policy to recover U of M property from suspended and terminated employees. Hoeltzel has failed to demonstrate that Smith violated his Fourth Amendment rights.

### B. Official Capacity Claim

Smith also argues that she is entitled to Eleventh Amendment immunity to the extent she is sued in her official capacity. (ECF No. 59, PageID.405-408). The Eleventh Amendment applies to a suit brought against a state by one of its own citizens. *Ex Parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment describes the contours of sovereign immunity, providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This means that "[t]he Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).

Smith is a U of M employee. "The University of Michigan is a department of the government of the State of Michigan and is thus protected by the Eleventh Amendment." *Lipian v. Univ. of Michigan*, 456 F. Supp. 3d 937, 954 (E.D. Mich. 2020). Accordingly, Smith is entitled to Eleventh Amendment immunity to the extent that she is sued in her official capacity. This includes immunity even from declaratory-judgment actions where a declaratory judgment would have "much the same effect as a full-fledged award of damages or restitution by the federal court." *Green v. Mansour*, 474 U.S. 64, 73 (1985) (permitting declaratory judgments would result in "a partial 'end run' around" the Supreme Court's Eleventh Amendment jurisprudence).

However, even though Smith is entitled to Eleventh Amendment immunity from damages and declaratory judgments, she may not be immune from injunctive relief. This is because "federal courts [may] enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014). "[T]he Eleventh Amendment does not preclude a suit against [state officers] for prospective injunctive relief." *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)); *see Ex parte Young*, 209 U.S. at 129. Further, "[w]hile [p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under

color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quotation marks and citations omitted). "As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit imposes liability on the entity that he represents." *Id.* (quotation marks and citations omitted).

The undersigned addressed this issue and concluded that Hoeltzel did not have a viable injunctive relief claim:

> Here, Hoeltzel requests the following injunctive relief: (1) an order directing defendants to release the allegedly illegally seized items to their respective owners and (2) an order "[p]reventing the University of Michigan from using its Police Department to seize property related to employment from employee's private property without a search warrant or probable cause." (ECF No. 1, PageID.10). "The return of illegally seized property can be a remedy for a violation of Fourth Amendment rights." *Covington v. Winger*, 562 F. Supp. 115, 119 (W.D. Mich 1983). However, Hoeltzel does not actually claim that any of the defendants possess the seized items. Presumably, the items are either within the possession of the U of M Police Department or have been returned to other U of M departments. Accordingly, even if the Court found that the items were illegally seized and should be returned, which it does not, it could only order that the items be returned to their owners, which they presumably have been. Moreover, as discussed above, none of the items were illegally seized.

(ECF No. 52, PageID.351).

The same is true as to Smith. Hoeltzel's claim against Smith in her official capacity fails as explained above.

15

## V. Conclusion

For the reasons stated above, the undersigned recommends that Smith's motion be GRANTED and the case be DISMISSED.

Dated: September 28, 2021  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
  United States Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2021.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager