UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK FRANKLIN HOELTZEL,

          Plaintiff,

v.

MARGIE PILLSBURY, MAUREEN BURKE,
SERGEANT CONNERS, DETECTIVE LUCAS,
TOM CARGILL, MARK WOROSZ, OFFICER
CHALOGIANIS, and LYNETTA SMITH,

          Defendants.
_____/

Case Number 19-12328
Honorable David M. Lawson
Magistrate Judge Kimberly G. Altman

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING AMENDED COMPLAINT WITH PREJUDICE**

    This case returns to this Court on remand from the court of appeals. Plaintiff Mark Franklin Hoeltzel, a former physician employed by the University of Michigan to conduct research at the Mott Hospital Pediatric Rheumatology Clinic, was suspected of engaging a patient in an unlawful sexual relationship. University police personnel (and a Washtenaw County Deputy Sheriff) obtained and executed a search warrant at Hoetzel's home and seized several items, including patient files that were part of the research project. Hoeltzel, without the assistance of an attorney, filed his complaint in this case alleging that the seizure of the property violated his rights under the Fourth Amendment. Adjudicating the defendants' dispositive motions, this Court held that the defendants were entitled to qualified immunity and dismissed the case. The court of appeals affirmed in part, vacated in part, and remanded. That court held that the defendants were not entitled to qualified immunity against the claim that the patient files were seized improperly because those files were not particularly described in the search warrant, and the plain view

doctrine could not justify the seizure because there was nothing incriminating about them that would have been apparent to the officers executing the search warrant. On remand, the case again was referred to Magistrate Judge Kimberly G. Altman for pretrial management. The remaining defendants filed a motion to dismiss or for summary judgment, and the plaintiff filed a motion for summary judgment. On September 27, 2024, Judge Altman filed a report recommending that the defendants' motion be granted, the plaintiff's motion be denied, and the case be dismissed. The plaintiff filed timely objections to the report and recommendation, and the matter is before the Court for fresh review.

I.

Like the magistrate judge, the Court recites the court of appeals's summary of the basic facts of the case:

> In August 2019, plaintiff Mark Franklin Hoeltzel sued University of Michigan Police Department (UMPD) detective Margie Pillsbury and other officers from the UMPD and the Washtenaw County Sheriff's Office, claiming that they violated his Fourth Amendment rights by seizing items from his home that were outside the scope of a valid search warrant.
>
> At the time of the search, Hoeltzel was a medical doctor employed by the University of Michigan Mott Hospital Pediatric Rheumatology Clinic. On December 5, 2017, the University suspended Hoeltzel's medical staff privileges based on reports of an inappropriate relationship with a patient. Pillsbury then opened an investigation into possible criminal conduct, which revealed that Hoeltzel had been in a three-year sexual relationship with a patient that began when she was 18 and that involved the exchange of sexually explicit messages via text and email.
>
> On December 11, Pillsbury obtained a search warrant for Hoeltzel's home, which described the property to be searched and seized as "any digital storage media, computer, cellular phone, or digital transmission device," "[a]ny and all images of a penis or nude images of [the patient]," and "[p]roof of residency, proof of ownership of computers, credit card bills." While executing the search warrant, the officers observed, in plain view, Hoeltzel's University identification card, a key fob, a duo token (a device that generates a passcode for University resources), and patient files. Pillsbury contacted University Medicine Security Manager Lynetta Smith, who instructed Pillsbury to seize the items owned by the University that gave Hoeltzel access to University facilities. The officers seized the items and listed them on the tabulation of items seized.

> Hoeltzel alleged that the seizure of the "employment-related" items — including a lanyard, identification card, key, duo token, and folder with research files — violated the Fourth Amendment because those items were outside the scope of the search warrant. He did not otherwise challenge the validity of the search or his subsequent state and federal criminal convictions. He sued the defendants in their individual and official capacities, seeking declaratory and injunctive relief and monetary damages. Hoeltzel later amended his complaint to identify a "Jane Roe" defendant as Smith and to clarify that only one defendant was employed by Washtenaw County.

*Hoeltzel v. Pillsbury*, No. 22-1668, 2023 WL 5339933, at *1-2 (6th Cir. Aug. 14, 2023).

The defendants moved for summary judgment, arguing that they were entitled to qualified immunity as to the individual-capacity claims because the items seized were reasonably related to the search warrant and that sovereign immunity barred the official-capacity claims. In response, Hoeltzel argued that certain material facts remained in dispute, such as which items were seized and who was present during the search, and that the defendants violated clearly established law by seizing items unrelated to the criminal investigation and thus were not entitled to qualified immunity. This Court adopted the recommendation of a magistrate judge over the plaintiff's objections and granted summary judgment to the defendants, concluding that their conduct did not violate clearly established law and that Hoeltzel was not entitled to any relief.

On appeal, Hoeltzel conceded that the University identification card and duo token were reasonably seized under the definition of digital storage media in the warrant. He argued, however, that the seizure of the research files and of the door key and lanyard, which were clipped to his identification card and duo token, violated his Fourth Amendment rights and that the defendants are not entitled to qualified immunity. The Sixth Circuit concluded that the defendants were entitled to qualified immunity as to the seizure of some of the items, and it affirmed the dismissal in part, vacating the judgment in part and remanding for further proceedings solely on the claim that patient files discovered by officers during the search were seized unreasonably without a warrant, concluding that the defendants had not demonstrated that they were entitled to qualified

immunity, "[b]ecause the files were not contraband, obvious evidence of a crime, or reasonably related to the offense forming the basis for the warrant." *Hoeltzel*, 2023 WL 5339933, at *3.

In the prior appeal, the Sixth Circuit was not presented with the question whether the plaintiff could maintain a viable claim for the allegedly unreasonable seizure of items in which the defendants say he held no possessory or ownership interest. After the case was remanded, the Court referred the matter to Magistrate Judge Altman to oversee further appropriate discovery and dispositive motion practice. *See* Order of Referral, ECF No. 93, PageID.635. After discovery closed, the defendants filed a combined motion for summary judgment under Federal Rule of Civil Procedure 56(a) and motion to dismiss for want of jurisdiction and failure to present a claim for relief under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The plaintiff in turn filed a motion for summary judgment seeking judgment as a matter of law in his favor.

On September 27, 2024, the magistrate judge issued a report recommending that the plaintiff's motion for summary judgment be denied and the defendants' motion to dismiss be granted. First, the magistrate judge suggested that the plaintiff had failed to state a viable Fourth Amendment claim because (1) the pertinent research agreement between Duke University and the University of Michigan established that patient files generated during the research undertaken by Hoeltzel were "confidential and shall be stored and retained by the registry site," i.e., the University of Michigan, and the agreement evidenced no intent by the parties to vest any possessory interest in those files in Hoeltzel, who was identified in the agreement only as the "Investigator" for the project, not a party to the agreement, (2) a declaration submitted by Tara Bradsher Berard, Associate General Counsel for the University of Michigan, confirmed that University employment policies would have required patient files to be maintained in confidentiality and stored on University premises, and that employees (including Hoeltzel) would

never have any individual possessory interest in such files, (3) Hoeltzel contended that he had a residual possessory interest in having the files at home for the purpose of performing research tasks unrelated to the clinical duties from which he was suspended, but he failed to submit any admissible evidence demonstrating that any such interest existed, and (4) in the absence of specific facts demonstrating the existence of an individual possessory interest, the mere assertion of physical possession alone was insufficient to sustain a claim for unreasonable seizure of the patient files. Second, the magistrate judge found that Hoeltzel lacked Article III standing to pursue any claim for unreasonable seizure of the files because, regardless of any possessory interest, it is undisputed that the patient research files were the property of Duke University, not Hoeltzel, and in the absence of ownership of a seized item a plaintiff suing under section 1983 cannot establish a "concrete, particularized injury" sufficient to confer standing.

Hoeltzel filed three numbered objections to the report and recommendation.

## II.

When a party files timely objections to a report and recommendation, the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(2), (3) (requiring court review of "any part of the magistrate judge's disposition that has been properly objected to") (emphasis added); *United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

But this review is not plenary.  "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The plaintiff's three objections essentially present five arguments, all but one of which fail to address directly the fundamental basis of the magistrate judge's recommendation.  Hoeltzel argues that (1) the magistrate judge erred by failing to analyze the propriety of the seizure under the "plain view exception" to the warrant requirement of the Fourth Amendment, rather than fixating on the possessory interest and ownership of the patient files, (2) the Sixth Circuit previously ruled that the seizure of the files was not excused under the plain view exception, and the defendants were not entitled to qualified immunity, (3) the magistrate judge improperly focused on the "seizure" of the files and did not address the plaintiff's claim for declaratory relief holding that the "search" was *per se* unconstitutional, (4) the cases cited by the magistrate judge are inapposite or distinguishable because they were criminal cases involving motions to suppress, not civil actions under 42 U.S.C. § 1983, involved claims only for "monetary and equitable relief" and not declaratory relief, or featured distinctive circumstances like a plaintiff's consent to a search and seizure, and (5) the conclusion that the plaintiff had no possessory interest in the files was in error because the magistrate judge ignored the plaintiff's sworn declaration in which he attested

that he still was permitted to perform ongoing research duties notwithstanding the clinical suspension, and the patient files "were necessary to perform [those] ongoing duties."

The essence of the recommendation was that, because the undisputed facts show that Hoeltzel had no possessory or ownership interest in the seized files, he had no protectable interest under the Fourth Amendment, and he did not suffer an injury, which he must show to have standing under Article III of the Constitution. These observations present both a merits determination and a jurisdictional determination. They present questions beyond qualified immunity, which no longer is part of this case.

The Sixth Circuit has warned that attacks on the merits should not be confounded with jurisdictional challenges, admonishing courts and parties to be more exacting when addressing challenges that are phrased as an attack on jurisdiction. *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 518-19 (6th Cir. 2006) ("'Clarity would be facilitated . . . if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'") (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam), and citing *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004)). The term "jurisdiction" refers specifically to "a court's adjudicatory authority." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010).

The magistrate judge correctly observed that a plaintiff must demonstrate "standing" to sue under Article III by establishing that he has suffered an actual or imminent, concrete and particularized injury; that the injury is fairly traceable to the conduct of the defendants; and that a favorable judicial decision likely would offer relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). She then reasoned that because Hoeltzel failed to prove that he had a possessory interest

in the files, he could not show that he suffered an injury and therefore he had no standing to proceed. The Court must part ways with that observation for a couple of reasons.

To begin, characterizing this question — Hoeltzel's possessory interest in the files — as one of "standing" miscasts the issue. The Supreme Court rejected the concept of "standing" for Fourth Amendment violations in *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978), *abrogated in part by Minnesota v. Carter*, 525 U.S. 83 (1998). It is commonly acknowledged that "in determining whether a defendant is able to show the violation of his . . . Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Carter,* 525 U.S. at 88 (quoting *Rakas,* 439 U.S. at 140). More than twenty-four years ago, the Sixth Circuit recognized that "the concept of 'standing' has not had a place in Fourth Amendment jurisprudence for more than a decade" and that "the matter of standing in the context of searches and seizures actually involve[s] substantive Fourth Amendment law [in which] . . . a defendant [must] prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct." *United States v. Smith,* 263 F.3d 571, 581-82 (6th Cir. 2001) (quoting *United States v. Sanchez,* 943 F.2d 110, 113 n.1 (1st Cir. 1991)).

Moreover, the Supreme Court has instructed that when "a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6)"; however, the Court should resort to dismissal for want of subject matter jurisdiction only where it "lack[s] subject-matter jurisdiction for non-merits reasons." *Brownback v. King*, 592 U.S. 209, 218 n.8 (2021). Here the defendants' challenge to the Fourth Amendment claim squarely engages the merits and turns on a fact-intensive analysis of whether the circumstances, as alleged, fit within the umbra of the decisional law

establishing the elements of the claim — i.e., whether the Hoeltzel had an interest in the seized files that is protected by the Fourth Amendment.

The Fourth Amendment prohibits "'unreasonable searches and seizures.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV). It is generally understood that a search and seizure is "unreasonable" "if it is not conducted pursuant to a warrant issued upon probable cause." *Ibid.* (citing *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528-29 (1967)). "For Fourth Amendment purposes, a seizure of property occurs when 'there is some meaningful interference with an individual's possessory interest in that property.'" *Bey v. Sessler*, No. 23-3421, 2024 WL 2078564, at *4 (6th Cir. Feb. 29, 2024) (quoting *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). In order to prevail on a claim of unreasonable seizure, the plaintiff "must show (1) a meaningful interference with [his] possessory interest in the property (2) that was unreasonable." *Ibid.* (citing *Soldal v. Cook County*, 506 U.S. 56, 71 (1992); *Jacobsen*, 466 U.S. at 113).

But "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Brown v. United States,* 411 U.S. 223, 230 (1973). Because those rights are personal, they "may be enforced only by persons whose own protection under the Amendment has been violated." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (citations omitted).

That brings us back to Hoeltzel's claim to the seized files. The claim fails here because he has not come forward with evidence substantial enough to justify submitting his Fourth Amendment unreasonable seizure claim to a jury. That is his burden under the summary judgment rule, Federal Rule of Civil Procedure 56. True, the party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate

- 9 -

that no material facts are genuinely in dispute. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). But "[o]nce that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

Hoeltzel's presentation falls short for at least two reasons. First, he has not produced proper admissible evidence to counter the defendants' unrebutted testimonial and documentary evidence that he had no present possessory interest in the patient files. Second, even if he could establish that the files were in his possession at the time of the seizure, the plaintiff lacks an interest that the Fourth Amendment protects because he admits that he was not the owner of the files, which undisputedly were the property of Duke University per the terms of the Research Agreement under which the patient files were created.

The plaintiff has failed to rebut the defendants' evidence that he held no possessory interest in patient files created during the course of his employment, because the pertinent patient data confidentiality policies prohibited removal of confidential patient data from Michigan Medicine premises, and the plaintiff has not identified any policy exception permitting him to sequester such materials at his home. University of Michigan Professor of Pediatrics and Internal Medicine Hillary Haftel attested: "I have reviewed Appendix A to this declaration [a photograph of the patient files taken at the time of the seizure] and recognize the depicted folders to be shadow files used to store research related information. These files were property of the University of Michigan, not personal property of Dr. Hoeltzel, and would have contained confidential patient-related information that should not have left Michigan Medicine grounds pursuant to Michigan

Medicine Confidentiality of Patient Information Policy, 01-04-002." Hillary Haftel decl., ECF No. 121-4, PageID.845; *see* Policy Statement ¶ III.F, ECF No. 121-5, PageID.849 ("Hard copy printouts of [protected health information] and aggregate data must be stored in a secure area and maintained in a confidential manner as is currently required of paper medical records."). That testimony, which the plaintiff has not rebutted with any contrary documents or testimony, establishes that under the applicable patient data handling policies promulgated by the University, the plaintiff had no business keeping patient files at his home for any reason.

As evidence supporting his claim of a possessory interest, Hoeltzel points only to his own sworn declaration. In that declaration, Hoeltzel explicitly conceded that the handling of the patient files was governed by the Research Agreement, that the files were not his property, and that according to the terms of the agreement the files were the property of Duke University. Hoeltzel decl. ¶ 6, ECN 124, PageID.916 ("All handling and disposition of data in these files was ultimately dictated/controlled by Duke University through a contract ('Agreement') with the University of Michigan. As such, it is my understanding that *the material was property of Duke University, and only Duke*. I was the named investigator on the Agreement that conferred temporary possessory interest in these files to the University of Michigan.") (emphasis added); *see also* Research Agreement, ¶ 5.1, ECF No. 121-7, PageID.864 ("Registry Site agrees that all information, data, clinical or technical, including the Protocol and any forms or reports relating to the Registry that are provided to Registry Site hereunder for the purpose of conducting the Registry is Duke's confidential information."); *id.* ¶ 4.2 ("The Parties agree to treat all PHI in accordance with any [informed consent form] and/or HIPPA Authorization signed by the Registry Subject."). Hoeltzel then asserts, without elaboration or citation of any legal authority or other evidence: "I was working with these files in my home," and "that was my 'possessory interest' in the files." *Id.* ¶

4. That *ipse dixit* — I had them, therefore I had a possessory interest — does nothing to show that he had a personal interest in the property that undisputably belonged to someone else. *See Brown*, 411 U.S. at 230. Hoeltzel points to no other evidence in the record suggesting that he held any valid possessory interest in the patient files. He simply asserts that because he was working on files in his house (that were not supposed to be removed from the department's premises), the Court should conclude as a matter of law that he had a valid possessory interest in them. However, "[i]t is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment." *Harrah's Ent., Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004). The unsubstantiated claim of possession in the plaintiff's declaration is not proper evidence that can sustain opposition to a motion for summary judgment.

Moreover, Hoeltzel expressly disclaims any claim of "ownership" of the files, and he has not offered any evidence to contradict the defendant's presentation, which establishes that, under the governing patient data handling policy, the University was within its rights to confiscate the patient files to prevent any unauthorized compromise of patient data. Other federal courts readily have held that a plaintiff lacking any present possessory interest in work product created within the scope of prior employment cannot sue for improper seizure. *E.g.*, *Albert v. State Bar of California*, No. 14-1905, 2015 WL 12683802, at *5 (C.D. Cal. Mar. 27, 2015) ("Plaintiff has not shown that a 'seizure' has occurred for purposes of the Fourth Amendment. Plaintiff makes no allegations that any property was seized other than the former client's files. Since Plaintiff did not have a possessory interest in the files, no seizure occurred when the officers moved the boxes.").

Because the plaintiff did not have a protectable interest in the seized files, his Fourth Amendment claim fails on the merits.

Despite the Sixth Circuit's declaration that a person's interest in seized property should not be treated as a standing issue, other courts have done just that. Under that line of cases, the plaintiff's concession that he had no ownership interest in the files is fatal to his Fourth Amendment claim under the "standing" rubric. As noted above, the plaintiff concedes that the patient files were the property of Duke University. The terms of the Research Agreement confirm the plaintiff's "understanding" about who owned the files. The Research Agreement expressly identified Hoeltzel as a non-party "Investigator," and the plaintiff has not pointed to any terms of the agreement vesting any interest of ownership or possession in patient data or patient files in himself in that capacity. *See* Research Agreement, ¶ 4.1, ECF No. 121-7, PageID.863 ("Registry Site desires to participate in the Registry with *Mark Hoeltzel, MD*, an employee of the Registry Site, acting within the scope of his employment at the Registry Site, conducting the Registry per the Protocol, and *is not a party to this Agreement*, acting as and hereinafter referred to as 'Investigator' . . . .") (emphasis added).

Some federal courts have held that where it is undisputed that a civil plaintiff lacks any ownership interest in an item, he also lacks "standing" to bring a cause of action for unlawful seizure under the Fourth Amendment and section 1983. *E.g.*, *Hayes v. Carter*, 129 F.3d 1264, 1997 WL 685420, at *1-2 (6th Cir. 1997) (Table) ("Mr. and Mrs. Hayes asserted that their Fourth Amendment rights were violated when [] Edwards seized property outside the scope of a warrant. . . . Upon review, we conclude that the district court properly granted summary judgment in favor of the defendants. First, we note that Mrs. Hayes lacks standing to bring the above claims because she did not provide evidence of ownership in the forfeited property and thus did not show that she suffered injury to a concrete, particularized interest.") (citations omitted); *Eiland v. Jackson*, 34 F. App'x 40, 42-43 (3d Cir. 2002) ("Eiland has failed [] to demonstrate that he had a possessory

interest in the property that was allegedly damaged. Eiland claims that Jackson and his fellow officers damaged three doors of the house when making their forced entry. He concedes, however, that he has no ownership interest in the house and that the house (and its doors) are owned by his daughter. [W]hile Eiland's daughter may have had standing to bring a claim asserting her property rights under the Fourth Amendment, Eiland himself did not. Because Eiland has not asserted the requisite interest in property, we need not discuss whether he alleged an injury in fact to that property before concluding that he lacked standing to bring a claim for the violation of his property rights under the Fourth Amendment."); *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) ("Pamela contends that Severino violated her Fourth Amendment rights when he seized her three horses. Initially, we note that because Robert admitted that he did not own the horses, and that the papers for the horses were all in Pamela's name, Robert lacked standing to sue."); *see also Barry v. Freshour*, 905 F.3d 912, 915 (5th Cir. 2018) ("[T]he Supreme Court has rejected a 'target' approach to Fourth Amendment standing that would look to whether the evidence obtained could be used against the person seeking to challenge the search. It has instead focused on whether the person raising the Fourth Amendment claim has a protected property or privacy interest in the place or things searched. For the reasons we have discussed, Barry does not have such an interest. Accordingly, Barry has failed to show a sufficient interest to assert a Fourth Amendment claim. Without a cognizable interest in the subpoenaed records, Barry cannot assert a Fourth Amendment violation."). The plaintiff has cited no legal authority holding to the contrary.

Finally, the plaintiff faults the magistrate judge for focusing on "seizure" rather than "search" in her analysis. That argument is a non-starter. There is not and never has been any claim in this case for an unreasonable *search*. *Hoeltzel*, 2023 WL 5339933, at *1-2 ("Hoeltzel alleged that the *seizure* of the 'employment-related' items — including a lanyard, identification card, key,

- 14 -

duo token, and folder with research files — violated the Fourth Amendment because those items were outside the scope of the search warrant. *He did not otherwise challenge the validity of the search or his subsequent state and federal criminal convictions*.") (emphasis added).  It is undisputed that the search of the plaintiff's premises was authorized by a warrant, and the plaintiff never has raised any challenge to the grounds for issuance of the warrant or the legality of entry under that authority.  If the defendants had not *seized* the patient files in question, there would be no factual basis at all for the claims framed by the pleadings in this case, and there was no misstep factual or legal in the magistrate judge's treatment of the sole surviving claim for unlawful seizure of the patient files.

III.

The plaintiff cannot succeed on his Fourth Amendment claim because he has not put forth sufficient evidence that he held any possessory interest in the patient files that were seized, and he undisputedly had no ownership interest in the files.  The plaintiff's objections are without merit.

Accordingly, it is **ORDERED** that the fourth report and recommendation (ECF No. 126) is **ADOPTED**, and the plaintiff's objections (ECF No. 129) are **OVERRULED**.

It is further **ORDERED** that the defendants' motion for summary judgment (ECF No. 118) is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment (ECF No. 120) is **DENIED**.

It is further **ORDERED** that the amended complaint in its entirety and all of the plaintiff's claims against all defendants are **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   March 10, 2025